Good morning, Your Honors. May it please the Court, I'm Tim Scott for the appellant Jeffrey Spanier. The first issue I'd like to address is the omissions instruction that was given over defense objection and whether that was error under United States v. Shields. Now, the holding in Shields is that an alleged omission or a nondisclosure can support a fraud charge only when there is an independent duty to make the disclosure. And it further holds that it's error to give an instruction that allows conviction on omission without also giving an instruction telling the jury when that independent duty arises. One aspect of that ruling is new law because the case relies on a long, long history of that principle. Is the only new thing about it is that it expressly applied it to wire fraud or is there something else new about it? No, I think that's a fair statement that it expressly applies it to wire fraud. I think that's the direction it was headed. That's the reason that we preserved those arguments under Lorienty and some of those earlier cases. But I think that's probably a fair statement. Now, the government's main argument or its first argument as to why this wasn't error under Shields was that somehow the law of the case precluded the district court from giving what I think is now acknowledged to be a correct instruction. That's simply not the case because if we assume that Shields is controlling precedent, then there's no question that an intervening, binding, published opinion trumps or supersedes an unpublished memorandum. So the model jury instruction, which is what the jury gave and what the panel approved, didn't include this omissions instruction? That's correct. It allowed conviction on omissions, but it didn't do the second part that's necessary of discussing fiduciary duty or another independent duty. And I think today that model instruction is now different. The court in general has recognized that the model instruction that used to be given was incorrect. In this particular matter, it's my understanding that the first verdict here was hung. There were six acquittals, and then the rest were hung. That's correct. And they gave the instruction? That's absolutely right. They gave the instruction that we wanted. Yes. And when we came down to this particular situation, they had basically the same except that they had Bellow's testimony? Correct. There was a person, Manny Bellow, who the government secured his testimony, we argued, as a result of the speedy trial violation. We did argue that that was a form of prejudice in a speedy trial context. Well, I can understand your argument in the speedy trial, but now I'm trying to bake it back to the omissions instruction situation. So we really can't say that this is like Thompson, can we? Because like in Thompson, they had the second grand jury and there was no new evidence. But they didn't give the omissions instruction, and so we found that to be error. So in this particular case, we had the second, but we had new testimony, right? So is really Thompson precedent for the idea the instruction should have been given? In a harmless error context? Yes. If the argument is that Manny Bellow establishes beyond a reasonable doubt? Well, his testimony is so, if you will, decisive, that one can swing the jury here even though the instruction was not given. I mean, that's the question. I think that is a fair question. And if his testimony was that overwhelming and that damning, I suppose that could be a vehicle towards harmless error. But his testimony simply wasn't that. He was an interesting cooperator in the sense that he never acknowledged that he did anything wrong. He never claimed that Mr. Spanier did anything wrong. It was a very interesting cross where he, question after question, said, no, there was no conspiracy. There was no fraud. He said that everything that he did was done correctly as well as Mr. Spanier. I think they used him at most to circumstantially suggest that somebody knew or should have known that stock was being sold to fund loans, although Mr. Bellow denied that entirely. In terms of the harmlessness, if I can drill down on that, this is a case, because it's a misinstruction on the elements of the offense, that the government bears the burden of showing harmlessness beyond a reasonable doubt. And the government doesn't quarrel with that in their papers. I think that they agree that that's the standard. I agree with that. We cited the Garrido case in a 28J, which is similar to the extent that in that case there was a conviction. This was after the skilling litigation where, like here, it became clear that one theory of liability is legally impermissible, and a different theory of liability is still permissible. And that applies here, or that's analogous to here, where you have an omissions path that's plainly not the law anymore, and you have a direct misrepresentations, or I suppose arguably a half-truth theory, that is still viable. The problem that Garrido confronted, and that we also confront here, is that in the absence of a special verdict form, or some other indicia of which path the jury took, the government simply can't meet the burden of showing harmlessness, and certainly can't meet it beyond a reasonable doubt. Did your trial attorney ask for a specific verdict form? We asked for all of the specific instructions. I believe we did ask for a specific jury form as to statute of limitations. Not that, as to the issue of which theory they were convicting under. I don't believe we did. Okay. I don't believe we did. And I guess the next question I have, the government argues they didn't use a pure omissions theory. Right. Now, the government can say that. I mean, to be fair, they're arguing a half-truth theory, or they say they're arguing a half-truth theory. And they're giving a second chance at it, and they have another witness. And a second half-truth theory would not necessarily ask for the omissions instruction, right? Well, I think there's a legal and a factual response to that. The legal is the harmless error that we just discussed. I agree. Can the government demonstrate beyond a reasonable doubt that the jury didn't go to omissions? I think the problem with their half-truth theory is that they're stuck with the record. And what I mean by that is this is a jury instructions issue. So if you look at the jury instructions that were given, it does say plain as day, omissions of material fact. That's in the instructions that the government asked for that we objected to and the court gave. The government didn't ask for an instruction that said half-truths. The same is true in the indictment. The indictment says omissions of material fact. It doesn't say half-truths. And I think perhaps one of the most telling indications as to this, what we would say is a post hoc theory of half-truths versus omissions, is that the district court, as is common in large, complex cases, as the court knows, rather than reading the whole indictment to the jury, it says to the parties, draft your theory of the case and give me two paragraphs of your indictment rather than the whole 12 pages. Now, this is at page 1801 that the district court instructed the government to do that. The government went back to its office. It returned with the two paragraphs, and this is at page 1812 of the ER, and those paragraphs say Mr. Spanier defrauded investors through misrepresentations, false promises, and omissions of material fact. That was the government's choice to describe their own case and their own indictment that way. And you argue that the government did present evidence that would allow the jury to decide on omissions theory. They certainly did. And, again, after the fact, we can quarrel with, you know, is that really more characterizable as a, that's a word, better characterized as a half-truth versus omission. But the way the evidence came out, and I tried to do this exhaustively, perhaps to a fault in the briefs, but witness after witness and question after question, and I was a trial attorney, and I struggled to convey just the relentless hammering on these themes that the government did through literally every single witness as Mr. Spanier didn't tell you about this lawsuit, did he? Did Mr. Spanier ever mention this complaint from an investor? Did Mr. Spanier ever mention this particular fee he received from Argyle? Particularly telling, and this is at page 1640 of the ER, in one of these litanies very early on, the defense specifically said, Your Honor, objection, omissions, l'orienti, which was, in our view, the controlling case pre-Shields. So we said omissions, l'orienti, objection, Your Honor. Now, that would have been a good time for the government to say, Your Honor, we're only offering this to show notice or knowledge, or this isn't an omissions, Your Honor, this is a half-truth. But they didn't. The silence was deafening. And instead, the district court simply said, overruled. It came in over an explicit omissions objection. And had the government really wanted this to be a half-truth versus an omissions case, they had the opportunity to do that, not just when I made that objection at 1640 of the ER, but we sort of took it a step further. And as we were wrangling about the jury instructions, we proposed a specific instruction along these lines that said to the jury, or would have said to the jury, Jury, you're instructed that an omission by itself cannot be the basis of a fraud conviction. However, a half-truth can be. And I'm paraphrasing a little bit, but it's for you, the jury, to decide, is this a half-truth or is this an omission? It just strikes us as unfair, to put it mildly, for the government to ask for an omissions instruction, to get an omissions instruction, to successfully persuade the court to deny us the very distinction that they're now making. If it really was a half-truth versus an omissions case and the government wanted that distinction to be made, that's a factual distinction that should have been made by the jury, and the government should not have objected to our attempt to draw that distinction factually. Now, as I understand their brief now, they feel that our half-truth versus omissions instruction wasn't perfect or they didn't like the language. We said right in the district court, we're not married to this language, but we want this distinction drawn, so let's discuss how we hash this out, and the district court nor the government were having any of it. So in terms of the harm, I think that the first trial, if we can go back to that, is very strong evidence. It's not enough to simply say, well, there was a new witness, because that new witness's testimony was not overwhelming evidence by any stretch of the imagination. He did not directly incriminate or finger Mr. Spanier. He didn't suggest that there was fraud afoot. The first instruction speaks for itself. That is exactly what the jury zeroed in on during deliberations. They asked questions about fiduciary duty. They asked questions about omission in some ways, and taking the point. Wait. Yes, sir. You say the questions. Was that in the first case or the second case? In the first trial. But how is that relevant in the second case? Because it shows harm. It was almost, we almost think of it like a scientific experiment where we controlled for the variables. In the first trial, we got the omissions instruction, and they wrestled with it. When I say omissions, I mean omissions plus the duty to disclose. But you have different evidence in the second trial, and you've got different juries and you've got different presentation of evidence. It's argued a little differently. So how is that relevant to the second trial? I mean, I know what you're trying to get to, but I'm having trouble understanding your analogy. Right. Really, the only difference is this person, Manny Bellow. Beyond that, everything was presented essentially identically. It really was argued the same way. The witnesses were virtually identical. That one witness was the only difference. In our position, it isn't that strong a difference. But at the end of the day, it's not that we have to show that that first trial conclusively demonstrates harm. Rather, as I think we agreed before, the government has to show beyond a reasonable doubt that there was no way that the misinstruction affected the jury here. And if nothing else, that first trial puts a pretty solid stone on the other side of the scale. It at least rebuts to some extent the government's argument that there was no harm. You've used down to a minute 14. Is there any other issue you want to specific? I've taken you really into this first issue. Any other issue you want to specifically argue that's especially important that I hear your argument? The one thing I wanted to address, and maybe can I reserve a minute for rebuttal? While you're out, you're done. Let me reserve one minute, and then I'll go. All right. If that's okay with the court. That's fine. All right. Thank you. May it please the Court. Peter Cuff of the United States. We're asking this Court to affirm Mr. Spanier's conviction. I will focus on the trusted duty instruction in connection with the omissions. Our position is that the district court correctly declined to give the instruction for two reasons. First, it was the law of the case. And second, in any event, it was a correct ruling. It was a correct ruling because this was argued as a half-truth case. Well, just a minute. How can you say it's a half-truth case when, in fact, when we go back and read what you wrote, as to what the judge should give or as to what you're supposed to prove, that in the summary of charges, the omissions is right in the middle of it? Correct. Every half-truth case involves an omission. That's unavoidable. The problem is that . . . But the problem comes in that there are two ways to have this duty of disclosure, even in civil trials. One is a half-truth, and one is that you have an omission, and you have a duty outside of the situation such that you shouldn't omit. And when you're talking about these omissions, I mean, I looked here. I found omissions testimony in 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 witnesses. Certainly. About omissions. And then, so with that testimony, I'm trying to say to myself, how does the district court get away without giving an omissions instruction with as much stuff as that was in front of the jury? Those omissions were in the context of half-truths. Every single witness was asked, what were you told about Mr. Spanier's fees that you were receiving in this case? And they said, we were told he was getting 5% up front. That's it. The omitted fact in every case, and of course it was asked, was were you told he was also receiving a back-end commission? And they all said no. But in that context, that omission is part of the half-truth. So that is the opposing counsel points to a couple of other elements. One, victims who were not told of the Argyle lawsuits, the lawsuits against Argyle, but didn't ask. That was one that they say was not in any sort of half-truth context. And also that the SEC and FBI had opened an investigation, but it wasn't included in the prospectus. So there they're pointing out or they're arguing that that was pure omission, nothing to do with a half-truth. Do you disagree with that? Those facts did come in. The district court admitted those facts, the lawsuits, the FBI investigation, things like that, for the purpose of establishing that Mr. Spanier was on notice of the problems that were going on with Argyle. Because Mr. Spanier's defense at trial essentially was, I was duped too. I had no idea this was going on, and it just didn't line up because he had been deposed in those lawsuits about the very things that were going on here. The district court gave a jury instruction that said that's the reason you are to consider those. It did come up in the testimony as well, however. For example, victim Richard Sellers testified that at some point he learned about one of the lawsuits. He did his own research, and he had a discussion with Mr. Spanier about it and said, hey, I discovered this lawsuit. What's going on? And Mr. Spanier reassured him and said, you know, hey, you're in business for a long time. Lawsuits happen. That was resolved. Again, it's now a half-truth because what he didn't disclose was we had lawsuits 2, 3, 4, 5, and 6 as well, and those were not resolved favorably to us. So, again, in that context, that is a half-truth. It is a misrepresentation. And in that context, the trust duty instruction does not have to be given. This court has been very clear about that. My worry about this is what is the difference in the first trial and the second trial? If I take the evidence in the first trial and I match it against the evidence in the second trial, if I take what was presented in the first trial and I match it against what was presented in the second trial, and I match what things happened in both trials, the only difference I find is it bellow. There's no other difference. Tell me what else there is that's a difference because the bottom line is, in the first trial, they got the instruction that the defendant wants. In this trial, they didn't, which, if I look at Thompson, that's pretty good evidence that this is not harmless. And, therefore, I'm saying to myself, did Bellow switch this? Well, I looked at Bellow's testimony, and I'll have to be fair. I agree with counsel. I don't think Bellow had anything to say. I mean, I don't think his argument was decisive at all. Let's swing this jury. So I said to myself, well, then, the only thing I can tell is that failure to give this instruction is what caused this. So it can't be harmless error. And that's exactly what we said in Thompson. I mean, it seems like the government, full well knowing that this was going to be a problem, all of a sudden, in the second case, comes up with this idea, I'm going to try this on half-truths rather than omissions. And so they try to change the way they talk about it, but the evidence is the same. I don't think we changed our theory. All along, it's been half-truths. Well, why did we not object to the omissions in the first case? We did object to that instruction. It was given over our objection, and it came up in the middle of trial. I guess I'll have to look at that again. Yeah. But, I mean, the honest truth is I'm having trouble with that. I'm having trouble with the fact that the evidence can come in the same, and we have one witness, which makes no difference. And now, because of one instruction, we don't have any acquittals, and we don't have any hangings. All we have is guilty as charged. And say that's not harmless? Well, understanding we're presupposing that it was error, and we're moving on to the harmless error. I understand that. So I agree with the court that that is one barometer the court can look at. However, I think, as Your Honor pointed out, this was not the same trial. Tell me, what was the different theories? There were no different theories. It was the same theory. And there wasn't any different arguments, and there wasn't any different cross-exam. The only thing we got is a new witness. It was a different jury. It was this defendant tried by himself instead of as part of a group. So now he is the sole focus of the case. It's a different way of arguing the case. And in this case, I think you still have to look at the evidence that was brought out at trial against him in analyzing whether or not it's harmless. The misrepresentations in this case were clear. It was Argyle has plenty of cash. Argyle will not sell your stock. That was a flagrant lie. Mr. Spanier is only receiving 5% up front. There was no disclosure of the back-end fee to any of these borrowers. Those things, when you look at that, there's no doubt those were material misrepresentations and omissions of material facts. So if we determine that the law of the case doesn't apply here because of the intervention of Shields, would we have, in order to find this harmless, we would have to say that there was so much evidence of misrepresentations and half-truths that any error in not giving the omission instruction was harmless beyond a reasonable doubt? Correct. But we do not believe Shields alters the balance in this case. Why is that? Because it was the first time that this rule was applied to wire fraud and changes in the model jury instruction. The rule was the first time it was applied to wire fraud, but it had been clear this was the rule for omissions in general from the securities fraud cases and mail fraud cases, and this Court had said repeatedly, I think as far back as Dowling, that mail and wire fraud statutes are interpreted exactly the same. But it wasn't in the model instructions? No. That clause about the trust duty instruction was added to the model instructions after this case. After Shields. Correct. So the instruction that was given, which we approved in the panel decision, lacked that trust duty, as you're calling it, the trust duty instruction. Yes. But in the model instruction, it's not an instruction that is given every time. It's one of those that's bracketed so that you have to apply it in the correct case. And it's our position this is not the correct case to apply. Because there was no omissions evidence that a jury reasonably could convict him on an omissions theory? Is that your position? Because this was a half-truth case, and the omissions were in the context of a half-truth. So all of the evidence that came in about omissions was so intertwined with the half-truth concept that the jury could not have found him guilty on an omissions theory alone. Is that your position? Yes. Basically that this was not a case where he said nothing at all about something. That's what distinguishes this case from Shields. Shields is a little ambiguous in terms of what the facts are. But from what I read of it, it appears to be a pure omissions case, because the court said in cases of standalone omissions, this is the trust duty instruction that has to be given. We never argued in this case this was a standalone. And when you look at the prejudice now ---- But didn't the judge say that we're not going to worry about Shields because it's a pure omissions theory? On the motion for new trial, yes, he did. I mean, he just said Shields is pure omissions. Yet I don't find anything in Shields that says it's just pure omissions. Well, that's why I was arguing that if you read Shields, I think it is a pure omissions case. Well, but just a minute, it says in order for omission to support the wire fraud, the jury must be instructed and must find. It says it's not error not to ---- it was error not to instruct the jury. It must find a relationship created, the duty before it can conclude the material disclosure supports the wire fraud. There's nothing in here that says that Shields is a pure omissions theory. Right before that quote you read in Shields, there's a phrase that says, standalone omissions require the instruction. And then if you look at the prejudice analysis in Shields, which is on page, I believe it's 824 of the opinion, when they're citing what was the omission that was prejudicial in the case, they said it's the government arguing that this person never disclosed a personal bankruptcy, and that personal bankruptcy, that failure to disclose it by itself is an example of fraud. And they said that was prejudicial because it never came ---- it appears to say it never came up in the trial or it never came up in the course of the fraud scheme where this person disclosed anything about having a personal bankruptcy of that nature. And that's what we're arguing is a pure omission, is you don't touch on the topic at all. Certainly you can't be held liable for that unless you have a duty to disclose it. That's not this case. He talked about his fees. He talked about them constantly. They're in the term sheets. I appreciate your argument, but why can't I find that Shields mandates omission instruction, whether the omission is used by the government argument or evidence, whether it's a pure omissions theory or not? Why can't I find that in Shields? I'm not sure I understand the question. Well, you're saying the only time Shields is applicable if it's a pure omissions theory. When I read Shields, I said to myself, I don't know that that's only as to pure omissions. It seems to me that Shields is mandating omissions instruction when omissions are used by the government, whether it's a pure omissions theory or not. I don't think that can be the interpretation of Shields. I don't think that can be the state of the law, because if that's the case, and every time there's an omission in the context of a half-truth, you have to give that trust duty instruction, you've just obliterated that whole half-truth doctrine. Well, so if the defendant asks for that instruction, it would seem, and there was evidence presented at trial of omissions, then it would seem that the court would have to give the instruction because it has a basis in law and fact. Isn't that the case? That's the standard for giving an instruction, yes. But in our case, the court would have to find that the government is arguing and the evidence supports that these were pure omissions, and that's not what the district court in this case found. It said this is a half-truth case. The government is arguing it is a half-truth case. They are saying you talked about your fees. You didn't disclose all of your fees. That's the problem. The thing that's worrisome about that to me is when the government went through it on the first case, the court really couldn't say that. The government came through on the second case and said, hey, we had a little problem, so we're going to talk, our words are going to be different. Not that it's any different case. It's just our words are going to be different. We're going to talk about a half-truth rather than omissions so much, even though we find omissions in here lots of times, and so therefore we get out of this instruction, and therefore it's okay? Respectfully, I don't believe that's what occurred. We have never argued this as a pure omissions case at any point in these proceedings. I think what occurred was after the first trial, everybody had a chance to see the full evidence and understand how the case was presented, and the district court realized I was wrong. And then it went up on appeal, and they made exactly the same arguments in front of a prior panel, and that panel analyzed it and said, you were correct. You did not abuse your discretion by declining to give that instruction. So that's where we are now, and I think that's why the district court again correctly realized that, hey, if the evidence is going to be substantially the same as it was before, this is not being argued as a pure omissions case. It is being argued as a half-truth case, and that's what it was. These were not topics that were never touched upon in the course of the fraud scheme. These were topics that were very much touched upon. He just did not disclose everything about it, and for that reason we believe his conviction should be affirmed. Unless the court has any other questions, I'll be happy to submit. Thank you. Thank you. Your Honors, I think Shields is a sturdier holding than what the government suggests. It doesn't turn on the turns of a phrase or what the government says its theory is. It turns on the elements of the offense, and it turns on the jury instructions. In response to the argument that giving a Shields instruction would obliterate half-truth, that's not at all true. If we were to look at ER page 215, which is the instruction that the court first gave in the first trial, it gave really a pretty accurate statement of Shields, and then it tacked on a sentence. This is at ER 215. It says, even in the absence of a trust relationship, one cannot affirmatively tell a misleading half-truth about a material fact. That would have gotten it done. That would have satisfied both parties. It would have accurately told the jury that division between an omission and half-truths and protected both interests. The fact that that was taken away in the second trial and the third trial speaks volumes. Thank you. Thank you for your arguments. And the case of United States v. Jeffrey Spanier is submitted. And the final case for argument is Granfridge v. Swift Transportation Company.
judges: Ikuta, N.R. Smith, McNamee